per curiam:
El Lie. Alfredo Berríos Pérez fue admitido al ejercicio de la notaría el 26 de abril de 1978.
El 19 de marzo de 2007, la Oficina de Inspección de Notarías rindió un informe sobre el estado de la notaría de Berríos Pérez, en el cual se destaca que sus Protocolos de 1996 y 1997 fueron aprobados con deficiencias, ello debido a que autorizó dos testamentos abiertos con errores que no pudieron subsanarse por el fallecimiento de los testadores.
Según el informe referido de la Oficina de Inspección de Notarías, en la escritura número 32 de 1966 sobre testa-mento abierto, el notario omitió dar fe del conocimiento o la identificación de la testadora; ésta compareció asistida de testigo, pues no sabía leer ni escribir, pero no consta la fe expresa de la lectura en voz alta por el notario y el testigo. Se fijó la huella de un solo dedo pulgar, sin expli-cación alguna por el notario.
En la escritura número 18 de 1997 sobre testamento abierto, el primer apellido de la legataria es erróneo. El notario pretendió corregir ese error mediante un acta notarial.
I
 El Código Civil de Puerto Rico regula todo lo con-cerniente a la autorización de testamentos en general y dispone, en cuanto a los testamentos abiertos, sus requisi-tos, el modo de otorgarlos y las formalidades que deben observarse. Por su parte, la ley notarial aplica supletoria-mente, complementando y asegurando el cumplimiento de tales disposiciones. Cintrón v. Cintrón, 70 D.P.R. 770 (1950); In re Irlanda Pérez, 162 D.P.R. 358 (2004). En este sentido, el testamento abierto, como instrumento público, debe cumplir no sólo con las solemnidades contenidas en el Código Civil, sino también con los requisitos de forma que *337 le impone la ley notarial y su reglamento. In re Nieves Ortiz, 144 D.P.R. 918 (1998).
A. Omisión del acto de lectura en alta voz
El Art. 645 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 2182, requiere que el testamento abierto se lea en voz alta para que el testador manifieste su conformidad con lo redactado. Este requisito adquiere mayor importancia cuando el testador no sabe leer ni escribir. Sobre el particular, tanto el Art. 21 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. see. 2039, como la Regla 32 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV, disponen que cuando un otorgante no sepa o no pueda leer, se dará lectura dos veces en voz alta al instrumento, una por el notario y otra por el testigo que dicho otorgante designe, de lo cual debe dar fe el notario en dicho instrumento.
B. Fijación de una sola huella dactilar
El Art. 645 del Código Civil, supra, dispone que si el testador y los testigos están conformes con el testamento, procederán a firmarlo. Por su parte, el Art. 25 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. see. 2043, y la Regla 32(c) del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV, disponen que cuando cualquiera de los otorgantes no sepa o no pueda firmar, el notario procurará que fijen las huellas digitales de sus dos dedos pulgares junto a la firma del testigo que a su ruego firme y al mar-gen de los demás folios del instrumento. El Art. 13 de la ley, 4 L.P.R.A. see. 2031, requiere la firma de los otorgantes al final de la escritura matriz como elemento indispensable de validez del instrumento. Así también, el Art. 16 (4 L.P.R.A. see. 2034) establece que los otorgantes y los testigos firmarán la escritura y estamparán, además, las letras de su nombre y apellido o apellidos al margen de cada una de las hojas del instrumento. Sucn. Santos v. Registrador, 108 D.P.R. 831 (1979).
*338 Por su parte, el Art. 34, en su inciso (3), 4 L.P.R.A. see. 2052(3), provee que serán nulos aquellos instrumentos en que no aparezcan las firmas de los otorgantes y los testi-gos, si los hubiese.
En la escritura núm. 32 de 1996, la testadora fijó una sola huella sin que el notario explicara la razón para ello. Luego el notario expresó al final del instrumento que todos la habían firmado, contrario a la legislación notarial antes discutida.
C. Omisión de la fe del conocimiento o identificación de la testadora
El Art. 634 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 2150, dispone que el notario y dos de los testigos deberán conocer al testador; si no lo conociesen, se identificará su persona con dos testigos que le conozcan y que sean conocidos del notario y de los testigos instrumentales. Por su parte, el Art. 635 (31 L.P.R.A. sec. 2151) establece que de no poder identificarse al testador en la forma prevista en el Art. 634, supra, el notario deberá aclarar tal circunstancia reseñando los documentos que el testador presente con dicho objeto y las señas personales de éste.
La dación de fe de conocimiento del testador es un requisito esencial para garantizar la autenticidad y veracidad de la declaración de voluntad de un testador y constituye una formalidad de fondo que afecta la validez del acto, conforme a lo establecido en el Art. 636 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 2152.
D. Autorización de acta de subsanación para corregir un testamento
Mediante la autorización del Acta Notarial núm. 31 de 18 de agosto de 1999, el notario Berríos Pérez pretendió corregir el primer apellido de una legataria instituida en *339 uno de los testamentos objeto de este informe. Aun cuando el ordenamiento notarial permite la rectificación y subsa-nación de los defectos de que adolezcan los documentos no-tariales inter vivos, mediante acta notarial bajo ciertas condiciones, la Regla 39 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV, excluye expresamente la utilización de este medio para subsanar los testamentos.
II
Como puede deducirse de todo lo anterior, en los dos asuntos que aquí nos conciernen el notario Berríos Pérez incumplió con las disposiciones de ley aplicables a la auto-rización de testamentos, lo cual pone en entredicho su va-lidez y constituyen faltas graves que exponen al notario inevitablemente a la jurisdicción disciplinaria de este Tribunal.
Al ponderar la sanción que procede aquí, debemos to-mar en cuenta que la actuación errónea del notario no causó daños, ya que en las dos instancias concernidas la distribución de la herencia se hizo conforme a lo dispuesto en los testimonios en cuestión. Así mismo debemos tomar en cuenta que el notario ha comparecido ante nos y ha aceptado sinceramente los errores cometidos. Se trata de un abogado notario de más de 80 años de edad, que hasta este caso no había cometido faltas en su desempeño profe-sional y quien se ha distinguido por su participación en el Programa Pro Bono del Colegio de Abogados.
En vista de todo lo anterior, se suspende a Alfredo Be-rríos Pérez por tres meses del ejercicio de la notaría solamente. Se le impone el deber de acreditar a este Tribunal el cumplimiento con lo anterior dentro del término de treinta días a partir de la notificación de esta opinión per curiam y Sentencia.
Finalmente, el Alguacil de este Tribunal deberá incau- *340 tarse de la obra y del sello notarial del abogado suspendido y entregarlos a la Directora de la Oficina de Inspección de Notarías para la correspondiente investigación e informe.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Fiol Matta no intervino.